UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EUGENE P.,[1] | : | Case No. 3:23-cv-22 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Eugene P. brings this case challenging the Social Security Administration's denial of his application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #7).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on January 15, 2020, alleging disability due to several impairments, including an aneurysm aorta; anxiety; fatigue; high blood pressure; short of breath; and weak legs. (Doc. #7-6, *PageID* #230). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a telephonic hearing before Administrative Law Judge ("ALJ") Stuart Adkins. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since January 4, 2020, the alleged onset date. |
| Step 2: | | He has the following severe impairments: aortic aneurysm status post-surgical repair; hypertension; emphysema; obstructive airway disease; obesity; anxiety; borderline intellectual functioning; and adjustment disorder. |
| Step 3: | | He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of a "light work [] with the following additional limitations: lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking for about 4 hours and sitting for about 6 hours in an 8 hour day; no climbing of ladders, ropes and scaffolds; frequent stooping, kneeling, crouching, crawling and climbing of ramps and stairs; occasional reaching overhead bilaterally; can tolerate occasional concentrated exposure to dusts, odors, fumes and pulmonary irritants; avoid unprotected heights, dangerous machinery and commercial driving; can perform simple, routine tasks but not at a production rate pace or strict |

|  |  |
|---|---|
|  | production quota; and can tolerate occasional changes to a routine work setting defined as 1-2 per week." |
| Step 4: | He is unable to perform his past relevant work as a fast-food cook or drywall applicator. |
| Step 5: | Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. |

(Doc. #7-2, *PageID* #s 58-67). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since January 4, 2020. *Id.* at 67.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 56-67), Plaintiff's Statement of Errors (Doc. #9), and the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion below.

## II.  Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.  Discussion

In this case, Plaintiff alleges that the ALJ reversibly erred at Step Two and Step Three of the sequential evaluation process by failing to find his Type B aortic aneurysm was a severe impairment and that his Type B aortic aneurysm meets the criteria of Listing 4.10. (Doc. #9, *PageID* #s 846-49). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence. (Doc. #10, *PageID* #s 855-61).

#### A.  Step Two

At Step Two of the five-step sequential evaluation process, the ALJ determines whether an individual's impairments are severe and whether they meet the twelve-month durational requirement. 20 C.F.R. § 404.1520(a). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Plaintiff's burden of establishing a "severe" impairment at Step Two of the disability determination process is construed as a "*de minimis* hurdle." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "Under the prevailing *de minimis*

4

view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

Nevertheless, an ALJ's failure to find additional severe impairments at Step Two "[does] not constitute reversible error," where the ALJ considers all of a plaintiff's impairments in the remaining steps of the disability determination. *Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). "In other words, if an ALJ errs by not including a particular impairment as an additional severe impairment in [S]tep [T]wo of his analysis, the error is harmless as long as the ALJ found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his [residual functional capacity]." *Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 678-79 (S.D. Ohio 2020) (citing *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-CV-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008); *Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006)).

As noted above, at Step Two, the ALJ found that Plaintiff had several severe impairments: aortic aneurysm status post-surgical repair, hypertension, emphysema, obstructive airway disease, obesity, anxiety, borderline intellectual functioning, and adjustment disorder. (Doc. #7-2, *PageID* #58). He also found that Plaintiff's burns were a non-severe impairment. *Id.*

In his Statement of Errors, Plaintiff contends that the ALJ reversibly erred at Step Two by failing to specifically find his "[T]ype B aortic aneurysm" to be a severe impairment. (Doc. #9, *PageID* #s 846-50). In response, the Commissioner does not dispute that this condition should be considered a severe impairment; instead, she maintains that the ALJ's finding of an "aortic

aneurysm status post-surgical repair" included both the Type A and Type B dissections. (Doc. #10, *PageID* #s 855-57).

Under the applicable regulations, an "aneurysm" is a "bulge in the aorta or one of its major branches." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00H6. A "dissection" of an aneurysm refers to the process "when the inner lining of the artery begins to separate from the arterial wall." *Id*. Both Plaintiff and the Commissioner agree that Plaintiff was diagnosed with two aortic dissections in January 2020: a Type A dissection affecting the ascending aorta and a Type B dissection affecting the descending aorta. (Doc. #9, *PageID* #848; Doc. #10; *PageID* #856) (citing Doc. #7-7, *PageID* #303; Doc. # 7-8, *PageID* #739).

In supporting his finding that Plaintiff had a severe impairment of "aortic aneurysm status post[-]surgical repair," the ALJ stated:

> Diagnostic imaging performed on January 4, 2020 revealed a Stanford type A *arising in the ascending aorta* just above the aortic valve *and extends into* the traverse and *descending thoracic aorta* and also extends into the abdominal aorta to involve the origins of the common iliac arteries (Exhibit 1F/26). As a result, [Plaintiff] alleges chest pain, legs being really tired, easily short of breath, swelling in his feet and fatigue (Exhibits 3E and 5F) … Because these *impairments* cause more than minimal limitation [Plaintiff's] ability to perform basic work-related functions when considered in combination with the [Plaintiff's] other impairments, they are severe pursuant to SSR 85-28.

(Doc. #7-2, *PageID* #s 58-59) (emphasis added).

Based on the foregoing, it appears that the ALJ's characterization of Plaintiff's severe impairment as an "aortic aneurysm status post[-]surgical impair" was intended to account for both Plaintiff's Type A dissection involving the ascending aorta and his Type B aortic dissection

involving the descending aorta. Accordingly, Plaintiff's contention that the ALJ erred in not considering his Type B aortic dissection to be a severe impairment is without merit.

Further, it appears to be undisputed that the ALJ considered Plaintiff's cardiac-related impairments in the remaining steps of the disability determination. Thus, any error in the ALJ not further delineating Plaintiff's Type B aortic dissection is harmless error. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007).

**B.     Step Three**

Plaintiff also challenges the ALJ's Step Three determination. (Doc. #9, *PageID* #s 847-50). At Step Three of the sequential process, the plaintiff carries the burden to show that he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, App. 1. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If an applicant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether an applicant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (citations omitted).

In this case, Plaintiff alleges that ALJ reversibly erred at Step Three, arguing that he should have found that Plaintiff meets the Listing 4.10 for an aortic aneurysm. (Doc. #9, *PageID* #s 847-50). Listing 4.10 describes an "[a]neurysm of aorta or major branches" that is "due to any cause" and "demonstrated by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.10. In concluding that Plaintiff did not meet Listing 4.10, the ALJ simply stated that Plaintiff's "aneurysm is controlled with prescribed treatment." (Doc. #7-2, *PageID* #59).

Under the applicable regulations, an aneurysm is considered to have "dissection not controlled by prescribed treatment" in any one of three scenarios: (1) "when there is persistence of chest pain due to progression of the dissection"; (2) "when there is an increase in the size of the aneurysm"; or (3) "when there is a compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00H6.

Here, Plaintiff contends that this second scenario is present. According to Plaintiff, the ALJ erred in finding that he did not meet Listing 4.10 because his dissection was, in fact, not controlled by prescribed treatment, as evidenced by the increase in size of his descending thoracic aortic aneurysm from January 2020 to May 2020. (Doc. #9, *PageID* #848). A review of the record supports Plaintiff's claim.

The undisputed evidence shows that Plaintiff sought emergency care for his chest pain on January 4, 2020. (Doc. #7-7, *PageID* #296; Doc. #7-8, *PageID* #s 647-48). A CT scan of Plaintiff's chest taken that day revealed the following impression:

> There is a Stanford type A dissection that arises in the ascending aorta just above the aortic valve and extends into the traverse and descending thoracic aorta and also

8

> extends into the abdominal aorta to involve the origins of the common iliac arteries. It is very difficult to ascertain whether there is involvement of the great vessels of the neck because of significant artifact across the origins.
>
> Bullous emphysema more extensive the right than left lung apex.

(Doc. #7-8, *PageID* #638). A CT scan of Plaintiff's abdomen and pelvis was also taken that day and indicated that the dissection in Plaintiff's thoracic aorta continued down into his abdominal aorta into the iliac arteries. *Id*. Upon review, Dr. Christiana Loyanne Smith diagnosed Plaintiff with "dissection of the thoracoabdominal aorta" and advised Plaintiff that he needed emergent surgery. *Id*. at 647-48.

The next day, on January 5, 2020, Plaintiff underwent an emergent repair of his acute Type A aortic dissection with replacement of ascending aorta from sinotubular junction along with a hemi-aortic arch replacement, repair of the aortic root, and right axillary artery cannulation. (Doc. #7-7, *PageID* #319). Following the surgery, Dr. Peter Michael Pavlina diagnosed Plaintiff with hypertension; Type A aortic dissection, s/p emergent repair; Type B aortic dissection; and tobacco abuse. *Id*. at 302-03. At a follow-up appointment on February 3, 2020, Plaintiff was advised to continue his beta-blockers for treatment of his "post ascending aortic aneurysm repair/chronic dissection of the descending aorta[.]" (Doc. #7-8, *PageID* #605).

On May 8, 2020, a CT angiography revealed the following findings:

> There is a long segment aortic dissection which starts at the distal aortic arch and extends to include the entire descending thoracic aorta, abdominal aorta, and bilateral common iliac arteries. Interval repair of ascending thoracic aortic dissection. The true and false lumens of the dissection are bot opacified with contrast. The dissection does not extend to include the renal or mesenteric arteries, which opacify normally. There is an *aneurysmal dilation of the descending thoracic aorta, measuring up to 3.5 x 3.7 cm at the level of the pulmonary arteries,*

9

> *previously measuring 3.0 x. 3.2 cm at the same level as of [January 4, 2020].* No abdominal aortic aneurysm.

(Doc. #7-8, *PageID* #585) (emphasis added). With regard to the findings on Plaintiff's descending thoracic aorta, the interpreting physician indicated that the imaging revealed "[d]escending thoracic aortic *aneurysm* measuring 3.5 x 3.7 cm, previously measuring 3.0 x 3.2 cm as of [January 4, 2020]." *Id*. at 586 (emphasis added).

In October 2020, Plaintiff had a repeat CT scan, which was interpreted as showing an "[a]neurysmal dilation of the descending thoracic aorta measuring up to 3.8 x 3.9 cm at the level of the pulmonary artery bifurcation, similar to the prior study" along with a "[s]imilar appearance of the dissection flap in the descending thoracic aorta and abdominal aorta in comparison to the prior study." *Id*. at 754. In comparing this imaging with that conducted on May 8, 2020, Plaintiff's medical provider stated that there was "[n]o increase in size of descending thoracic aortic aneurysm." *Id*. at 739. A final CT angiography was performed on March 10, 2022, and was reported as a "[s]table exam" with "[r]e demonstration of aortic dissection extending to visualize distal thoracic aorta, abdominal aorta into the iliacs." (Doc. #7-2, *PageID* #34).

Based on the foregoing, Plaintiff has set forth specific evidence demonstrating that his "dissection [is] not controlled by prescribed treatment" because there has been "an increase in the size of the aneurysm[.]" *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00H6. Indeed, the May 8, 2020 CT angiography revealed that Plaintiff's "descending thoracic aortic aneurysm" increased from 3.0 x 3.2 cm on January 4, 2020 to 3.5 x 3.7 cm in May 2020. (Doc. #7-8, *PageID* #s 585-86). Further, after increasing in size, Plaintiff's descending thoracic aortic aneurysm maintained its increased size for a duration lasting over 12 months, as evidenced by the subsequent CT scans

10

taken in October 2020 and March 2022. *See* Doc. #s 7-2, *PageID* #34; Doc. #7-8, *PageID* #s 739, 754.

In response, the Commissioner argues that the aneurysm did not increase in size, citing to the medical provider's summary of the October 2020 CT scan, which provided that "there was "[n]o increase in size of descending thoracic aortic aneurysm." (Doc. #10, *PageID* #s 859-60) (citing Doc. #7-8, *PageID* #739). What the Commissioner fails to include in this citation is the fact that the medical provider was comparing the October 2020 CT scan to the May 8, 2020 CT scan, which had already demonstrated that the descending thoracic aortic aneurysm increased in size from January 2020. *See* Doc. #7-8, *PageID* #s 739, 754. Thus, to the extent that the Commissioner was suggesting that the aneurysm must increase in size every time it is measured, her argument is without merit. Indeed, the express language of the regulations provide that a dissection is not controlled by prescribed treatment "when there is *an increase* in the size of the aneurysm." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00H6 (emphasis added). As previously noted, Plaintiff had already demonstrated "an increase in size of the aneurysm" on his May 8, 2020 CT angiography scan. The fact that the aneurysm remained stable but did not grow further does not negate this. Thus, the Commissioner's reliance on the October 2020 CT scan to support its position that the aneurysm did not increase in size is misleading and without merit.

Similarly, the Commissioner's argument that any increase in size occurred in Plaintiff's "thoracic aorta" as opposed to the "aneurysm" itself is not supported by the record. Indeed, the physician interpreting Plaintiff's May 8, 2020 CT angiography scan expressly stated that the

11

imaging showed "[d]escending thoracic aortic *aneurysm* measuring 3.5 x 3.7 cm, previously measuring 3.0 x 3.2 cm as of [January 4, 2020]." (Doc. #7-8, *PageID* #586) (emphasis added).

Finally, the Commissioner's argument that Plaintiff does not meet Listing 4.10 because the state agency reviewing physicians considered Listing 4.10 and found that Plaintiff did not meet its requirements is not persuasive. While the state agency physicians considered Listing 4.10, they failed to provide any explanation as to why he did not meet the listing. S*ee* Doc. #7-3, *PageID* #s 122-26, 134-38).  As a result, their opinions fail to constitute persuasive contrary evidence that Plaintiff does not meet Listing 4.10.

In short, the ALJ's conclusion that Plaintiff does not meet Listing 4.10 on the basis that his "aneurysm is controlled with prescribed treatment" is not supported by substantial evidence. Instead, Plaintiff has clearly demonstrated with appropriate medically acceptable imaging that his descending thoracic aortic aneurysm with a Type B dissection is not controlled by prescribed treatment. For these reasons, Plaintiff has carried his burden to show that the ALJ erred and that he has an impairment that meets Listing 4.10. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii).

Further, this error is not harmless as the "regulations indicate that if a person is found to meet a Listed Impairment, [he is] disabled within the meaning of the regulations and [is] entitled to benefits; no more analysis is necessary." *Reynolds*, 424 F. App'x at 416 (citing 20 C.F.R. § 404.1520(a)(4)(iii)). Accordingly, Plaintiff's Statement of Errors is well-taken.

C. **Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Here, Plaintiff has presented specific evidence demonstrating that he meets all of the criteria for Listing 4.10 at Step Three of the sequential process and that any evidence to the contrary is lacking. Since Plaintiff's impairment meets a Listed Impairment, he is found disabled without

13

any need to consider his age, education, or work experience. *See* 20 C.F.R. § 404.1520(d); *Reynolds*, 424 F. App'x at 416. Thus, a remand for the immediate award of benefits is warranted. *See Faucher*, 17 F.3d at 176.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #9) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for an immediate award of benefits consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

March 1, 2024                                       *s/Peter B. Silvain, Jr.*
                                                    Peter B. Silvain, Jr.
                                                    United States Magistrate Judge